## Case No. 9,153.

### In re MARTIN.

### [2 N. B. R. 548 (Quarto, 169).] [1]

District Court, S. D. New York. April 26, 1869.

BANKRUPTCY — DISCHARGE — EXEMPT PROPERTY— DELAY IN APPLICATION.

A bankrupt who had no assets except certain property set apart as exempt, failed to apply for a discharge within a year after adjudication of bankruptcy. *Held*, that the granting of a discharge was not a right, but a favor conditioned upon the performance of certain requirements of the statute, and the failure to make said application would preclude a discharge.

[Cited in Re Brockway, 23 Fed. 585; Re Sloan, Case No. 12,945.]

In bankruptcy

## Case No. 9,154.

### In re MARTIN.

### [2 Paine, 348.] [1]

### Circuit Court, S. D. New York.[2]

SLAVERY — FUGITIVE SLAVE ACT — ARREST—EXAMINATION—TRIAL BY JURY—MATTERS OF FACT.

1. The act of congress empowering persons claiming the services of a fugitive slave, to seize or arrest him and take him before a magistrate, &c., makes no provision for the issuing of any process for the purpose of authorizing such arrest; and it has never been the practice, under that law, to issue any such process.

2. When the alleged fugitive is brought before the magistrate, the latter acquires jurisdiction of the case, and authority to proceed with the inquiry, whether the person so seized and brought before him doth, under the laws of the state from which he fled, owe service or labor to the person claiming him.

3. While such examination is pending, the party is in the custody of the law, and the magistrate has authority to imprison him for safe keeping. And during such examination, process issuing out of this court to an United States officer to take the alleged fugitive from the custody of the state officer, would be illegal.

4. The writ de homine replegiando, though nearly obsolete, is a common law proceeding, applicable to a trial of the question of slavery.

5. The act of congress relative to the reclamation of fugitive slaves, is constitutional and valid.

6. The object of the inquiry before the magistrate is only for the purpose of sanctioning the seizure or arrest, and authorizing the removal of the fugitive to the state from which he fled, and does not contemplate a trial on the merits.

7. The right of trial by jury, secured by the 7th article of the amendments of the constitution, is the trial according to the course of the common law, and is confined to matters of fact

[1] [Reported by Elijah Paine, Jr., Esq.]

[2] [Date not given. 2 Paine includes cases decided from 1827 to 1840.]

only. And the inquiry before the magistrate under this act of congress, so far as the question of slavery is involved, is a question of law, and not a question of fact.

THOMPSON, Circuit Justice. This is a motion to quash the writs de homine replegiando, issued out of, and made returnable in this court, by which the marshal is commanded that he cause to be replevied Peter Martin, otherwise called Lewis Martin, a citizen of the state of New York, (whom John Enders and John Grace, citizens of the state of Virginia, have taken and do keep,) &c. From the affidavits upon which this motion is founded, it appears that Peter was claimed as the slave of John Enders, and owed labor and service to him, at the city of Richmond, in the state of Virginia, from whence he had escaped. Upon satisfactory proof of these facts being given to the recorder of New York, he allowed a habeas corpus, upon which Peter was taken and brought before him. But before the recorder had decided upon the case, the writs of homine replegiando were issued to the marshal of this district, and the custody of Peter was transferred from the sheriff to the marshal. Certain proceedings were afterwards had in the supreme court of the state, which it is not material here to notice. At a subsequent day, to wit, on the 20th of October last, Peter was brought before the recorder, who, after having heard the proofs and allegations of the parties, granted a certificate, according to the provisions of the act of congress of February, 1793, — 2 Bl. & D. 331 [1 Stat. 302].

It is not material here to examine whether or not the recorder had authority to allow a habeas corpus to bring before him the party examined as a slave. This course was probably adopted in conformity to the act of the legislature of this state. But the view we have taken of this case does not involve an inquiry into the validity of that law. The supreme court of this state has declared it unconstitutional and void. It is understood, however, that a writ of error has been brought upon that judgment, which is now pending before the court of errors; and it does not become this court unnecessarily to volunteer an opinion upon that question. Admitting the recorder had no authority to allow a habeas corpus, yet when the party was brought before him he acquired jurisdiction of the case, unless the act of congress is unconstitutional and void. That law empowers the persons claiming the services of the fugitive, to seize or arrest him, and take him before a magistrate, &c. No provision is made for the issuing of any process for the purpose of authorizing such arrest; and so far as our knowledge extends, it has never been the practice under that law to issue any such process. But the issuing or allowing the process cannot affect the jurisdiction of the magistrate. It must be deemed the act of the claimant, and if he had a right to arrest the fugitive without any process, that right is not taken away or relinquished by having such process. The recorder, therefore, had jurisdiction of the case, and authority to proceed in the inquiry, whether the person so seized and brought before him doth, under the laws of the state from which he fled, owe service or labor to the person claiming him. This inquiry may take up some time, and require some delay for the purpose of procuring testimony; and whilst such examination is pending, the party must be deemed in the custody of the law, and the magistrate must necessarily have authority to imprison him for safe keeping. When, therefore, the writs of homine replegiando were served, the fugitive was taken out of the custody of the law; and this was an illegal execution of those writs whether the habeas corpus was void or not. If it was valid, the fugitive was in the custody of the sheriff of the city and county of New York, a state officer. And to permit the marshal, a United States officer, under a process issuing out of this court to take a party from the custody of the state officer, would be sanctioning a conflict that might be very serious in its consequences, and cannot be justified or excused. But if the habeas corpus was void, the execution of the writs of homine replegiando was illegal, for the fugitive was either in the custody of the law under the order of the recorder, or was in the custody of the claimant. If in the custody of the law, it was irregular to execute the writs pending the examination before the recorder, and if in custody of the claimant, a penalty of five hundred dollars is incurred by any person who shall knowingly and willingly obstruct the claimant in seizing or arresting such fugitive, or shall rescue such fugitive from such claimant when so arrested.

It will be perceived that this opinion, thus far, has assumed the act of congress to be a valid and constitutional law. But the objections that have been raised against the proceedings under the homine replegiando, have been attempted to be surmounted by endeavoring to show that that law is unconstitutional and void. and that, of course, the arrest of the fugitive by the claimant was illegal; and that all the proceedings before the recorder were coram non judice, and furnished no objection to the service of the writs of homine replegiando, or justification for obtaining the fugitive. If the act of congress is unconstitutional and void. we see no objection to the issuing of a homine replegiando, to try the question of slavery. It is a common law proceeding applicable to such a case; and although nearly obsolete, we cannot deny to the party the right of resorting to it. Whether the writs in the present case, and the proceedings under them, are regular and according to the course of the common law, it is unnecessary to inquire, as we are clearly of opinion that the act of congress is a

valid and constitutional law, and that the writs of homine replegiando must be set aside for irregularity. The great objection which has been urged against this law is, that it deprives the party of the trial by jury, which, it is said, is a common law right, secured under the 7th article of the amendments to the constitution. If the inquiry before the magistrate was a trial upon the merits, and conclusive upon the question of slavery, there would be great force in the objection; but it is not. It is only a preliminary examination to authorize the claimant to take back the fugitive to the state from whence he fled, and the question whether he is a slave or not is open to inquiry there, and we cannot listen for a moment to any suggestion that this question will not be then fairly and impartially tried. Reference to the act of congress will show such to be its provisions. It declares that, "where a person held to labor in any of the states, &c., under the laws thereof, shall escape into any other of the said states or territories, the person to whom such labor or service may be due, his agent or attorney, is empowered to seize or arrest such fugitive from labor, and take him or her before some judge or magistrate, (designated in the act,) and upon proof, to the satisfaction of such judge or magistrate, that the person so seized or arrested doth, under the laws of the state or territory from which he or she fled from service or labor, owe service or labor to the person claiming him or her, it shall be the duty of such judge or magistrate to give a certificate thereof to such claimant, which shall be a sufficient warrant for removing such fugitive from labor, to the state or territory from which he or she fled."

The object of the inquiry before the magistrate is clearly for the purpose only of sanctioning the seizure or arrest, and authorizing the removal of the fugitive to the state from which he fled. This necessarily involves an inquiry as to the identity of the person, as well as the question, whether, by the laws of the state from which he fled, he owes service or labor to the person claiming him. The magistrate must be satisfied that the person so brought before him does owe such service, and the examination is limited to these two questions, and depends upon proof being made satisfactory to the magistrate upon these two points. If this was intended to be a final determination of the question of slavery, the law would, doubtless, have declared the freedom of the slave to be thereby established, and it would be a judicial proceeding which would, under the constitution of the United States, be binding in each state. The magistrates designated in the act, who are authorized to entertain this inquiry, clearly show it would not be intended as a trial upon the merits of the case. It may be made before any judge of the circuit or district courts of the United States, residing or being within the state, or before any magistrate of a county, city or town corporate wherein such

seizure or arrest shall be made. The 7th article of the amendments to the constitution does not apply to any such preliminary inquiries. It declares that, "in suits at common law, when the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved." It is unnecessary to determine whether this amendment is not limited to suits involving a trial of the right of property merely, which is susceptible of valuation, and not to a question of personal liberty, which admits of no pecuniary valuation. But admitting that the trial upon the merits, under the homine replegiando, or any other mode of proceeding which is final upon the question of slavery, would fall within this amendment, and would require a trial by jury, it by no means follows that, for the purposes contemplated by this act of congress, the right of trial by jury is secured. If it is, it is secured in every case where a fugitive from justice is demanded according to the provisions of the same act of congress; and, indeed, it is secured in every possible case of arrest upon a criminal charge; for the identity of the person and prima facie evidence of guilt are subjects of inquiry, upon every such arrest. But another reason may be assigned why this amendment of the constitution has no bearing upon the law in question; the right of trial by jury, secured by this amendment, is the trial according to the course of the common law, and is confined to matters of fact only. All questions of law arising upon suits at common law, are decided by the court; and the inquiry before the magistrate, under this act of congress, so far as the question of slavery is involved, is a question of law and not a question of fact. The magistrate is to inquire whether, under the laws of the state or territory from which the fugitive fled, he owes service or labor to the person claiming him. But it is said that congress has no power to legislate at all upon this subject, there being no express delegation of such power in the constitution. The provision in the constitution is (article 4, § 2): "No person held to service or labor in one state, under the laws thereof, escaping into another, shall, in consequence of any law or regulation therein, be discharged from such service or labor, but shall be delivered up on claim of the party to whom such service or labor may be due." This provision contains a prohibition to the states to pass any law discharging the persons escaping from the labor or service which he owes to another; and all such laws would be null and void, and no positive legislation mig. * be necessary on the subject. But to secure the benefit of the latter part of the provision, some legislation on the subject, either by congress or by the states, is indispensable. It declares that the party escaping shall be delivered up to the party to whom he owes labor and service; but the mode and manner in which this is to be done and enforced must be provided for by law: the constitution makes no provision on that

subject, and it cannot be presumed that it was intended to leave this to state legislation. There is no express injunction upon the states to pass any laws on the subject; and unless they choose to do it, the great benefit intended to be secured to slaveholders would be entirely defeated. We know, historically, that this was a subject that created great difficulty in the formation of the constitution, and that it resulted in a compromise not entirely satisfactory to a portion of the United States. But whatever our private opinions on the subject of slavery may be, we are bound in good faith to carry into execution the constitutional provisions in relation to it; and it would be an extravagant construction of this provision in the constitution, to suppose it to be left discretionary in the states to comply with it or not, as they should think proper.

We are, accordingly, of opinion that the act of congress under which the certificate of the recorder was given, is a valid and constitutional law, and that the writs of homine replegiando were irregularly issued, and must be set aside.

The subject of the reclamation of fugitive slaves was very fully discussed by Chief Justice Shaw in Sim's Case, 7 Cush. 285. And see, also, Dixon v. Allender, 18 Wend. 678.